(15 Misc. Rep. 501.)

### O'CONNOR v. LONG ISLAND TRACTION CO. et al.

(Supreme Court, Special Term, Kings County. January, 1896.)

CORPORATIONS—RECEIVER.

A receiver cannot be appointed for a corporation owning all the stock of another corporation because of mismanagement and waste by the latter corporation.

Action by Emma J. O'Connor against the Long Island Traction Company and others. Plaintiff moves for appointment of a receiver for the corporation. Denied.

James C. Church and Almet F. Jenks, for plaintiff.

Julien T. Davies, William F. Sheehan, and W. C. Trull, for defendants.

GAYNOR, J. The plaintiff brings this action as a stockholder in the Long Island Traction Company. The company and its directors are the parties defendant. Waste and spoliation by the directors of the corporate property, and insolvency of the company due thereto, are charged. The corporation is a foreign one. The prayer of the complaint is that a receiver be appointed to take possession of and protect the assets of the company. The facts alleged involve the conduct of the directors of the Brooklyn City Railroad Company, and of the Brooklyn Heights Railroad Company, as well as of the said traction company; and, as the latter company and its directors are the only parties defendant before the court, discrimination must be had in respect of what facts are applicable. However grievous may be the charges made or facts shown, redress may be had herein only against the parties defendant, and only for their own acts. If wrongs have been committed by the directors of the other two companies, they can be redressed only in actions against them.

The facts shown before me are easily stated. The Brooklyn City Railroad Company was a great, prosperous, and useful corporation. It had about 176 miles of street-railroad track in Brooklyn. Its stockholders were legally entitled to its large net earnings as dividends. Its papers shares of capital stock and its bonded debt had been increased till the former had reached $12,000,000, and the latter $6,000,000. In the year 1893 those in control leased this company, and all of its great plant, property, and earning capacity, for 999 years to the Brooklyn Heights Railroad Company, a small corporation, with paper shares of capital stock aggregating only $200,000. This small company, with limited assets and no net earnings, so far as appears, and having a franchise for and owning only about a mile of track, agreed in this lease to pay all of the operating expenses, cost of repairs, and fixed charges

(including interest upon the said $6,000,000 of bonded indebtedness) of the great system of which it thus became lessee, and, in addition, 10 per cent. annually upon the said $12,000,000 of paper shares of stock of the lessor company. All earnings of the Brooklyn City Company over and above this it was to keep. The Brooklyn City Company, instead of continuing to conduct its business, and to operate the public franchises and perform the public duties intrusted to it by the state, thus turned all over to this little lessee company, and made that company the absorber of all of its net earnings above an annual dividend of 10 per cent. upon its said $12,000,000 of paper shares. Practically nothing remained for the directors of the Brooklyn City Company to do except to receive the money for this 10 per cent. dividend and distribute it among the stockholders. About the time that this lease was made, the individuals who were the directors of the said lessee company caused this defendant corporation, viz., the Long Island Traction Company, to be organized. It is not a corporation of this state, nor a railroad corporation, nor engaged in railroad traction, notwithstanding its name to the contrary. It was organized in the state of Virginia, though its directors were and are all residents of this state. Its corporate life was not given, nor may it be taken away or limited by the sovereign power of this state. Its allegiance, and its principal and paramount responsibilities, are to the laws and government of the state of Virginia, though it has no property in that state, and whatever it has is here, and its directors are residents here. It was organized with paper shares purporting to represent a capital of $30,000,000. That it never had this capital, and that its paper shares were disposed of for a small fraction of it, or given away, is apparent. The papers before me show no reason or excuse for its existence, at the beginning or now. The plaintiff's standing in a court of equity as a complaining stockholder in such a company can scarcely be fixed by a high standard. The succession of evils which have followed it, as well as its present predicament, were all natural consequences. Upon its organization it obtained and became the sole owner of all of the said paper shares of stock of the said Brooklyn Heights Railroad Company, purporting to represent a capital of only $200,-000, as already stated. The object of its creation was thus revealed. It was to absorb, by means of its ownership of the said paper shares of the Brooklyn Heights Company, all of the net earnings of the Brooklyn City Company, over and above the said 10 per cent. annual dividend upon the said $12,000,000 of paper shares of stock of that company. If enough could be so absorbed to pay dividends upon its said $30,000,000 of paper shares, they would thus be made valuable. Such is the scheme which the papers before me reveal in detail. Fraud and waste are charged as having attended the main things done under it; but it is not for this court to condemn the scheme itself as a whole, or in any of the links or connections which make it up. I must and do fully recognize that the laws of this state allow the like, and leave the question of the effect of such use of public franchises upon public

morality, and upon honest industry and enterprise, to be discussed elsewhere. A court must accept and administer the laws as they are. But, though I may not take this wider view, I am obliged to consider the attendant wrongs which are particularized in the papers before me, and were urged upon the argument as bearing upon the case.

1. When the said lease by the Brooklyn City Company of its property to the Brooklyn Heights Company was about to be executed, an action was brought, and an injunction obtained to prevent it, by one Markey, a stockholder in the former company. Thereupon one Flynn came into negotiation with the individuals connected with the scheme, and who were to make large individual profits out of its consummation. He professed to be able to control the said action, and to stop it at will; and so the fact proved to be. The result was that he was let into the profit of the scheme or enterprise in consideration of his getting out of the way with his injunction suit, and received therefor (to use the words of the uncontradicted affidavit before me) "several hundreds of thousands of dollars" in railroad bonds and money. It is urged that, having been thus successful in making several hundred thousand dollars by the abuse of a legal action by a stockholder who merely stood for him, and was subject to his control, he is now trying to do the like again by means of this plaintiff, who is his niece and a member of his household, and of her nominal ownership of 150 of the paper shares of the Traction Company, and that therefore a court of equity will not aid him in such a purpose, disguised under the honest and meritorious forms of an action to prevent alleged breaches of trust. I am, of course, impressed by this contention, and ready to deem the facts which support it sufficient to defeat this action. A court cannot knowingly allow itself to be used for such a purpose. At the same time, it is still more impressive that those engaged in making individual profit out of such exploiting and manipulation of public franchises, and of companies endowed therewith by the people of the state only to enable them to do a public service, should yield to such an attack in their eagerness to get through, or their fear of being thwarted; and that their gain was to be so great that they could pay out of it such an enormous exaction.

2. Of the $12,000,000 of paper shares of stock and the $6,000,000 of bonds of the Brooklyn City Company, which existed, as above stated, when that company was leased to the Brooklyn Heights Company, $3,000,000 of each were unissued. In the lease, the lessee company undertook to change the roads from horse, to electric, motive power, and the proceeds of these $6,000,000 in bonds and stock were to be paid to it by the lessor company for that purpose. The said money was paid, and the change was made. The allegation now is that the work was done by the directors of the said lessee company in an inferior manner at excessive prices; that some of the contracts for the doing of the work were made at excessive prices with corporations in which the said directors were also directors, so that they actually dealt with themselves in this man-

ner for their individual profit; that the money was recklessly, fraudulently, and wastefully spent; that the material used was so inferior that it actually had to be replaced in a few months; that not only the said $6,000,000 were in that way spent, but in addition a large sum of money, about $2,000,000 of which were borrowed; that the earnings of the said company have been used for such repairs, to such an extent that the operating expenses have gone up to 70 per cent. of the gross earnings, whereas they should not exceed 55 per cent.; and that, owing to these extravagances, the company has been and is unable to pay the rent upon the said lease, and may lose it by forfeiture. But all this has no legal relation to the present action, however it might be considered in a like suit by a stockholder of the Brooklyn Heights Company against its directors; whereas, this action is against the traction company and its directors only, and their conduct alone is open to examination under the present complaint.

3. It is also alleged that, for a period of six weeks or two months, the business of the said lessee railroad company was suspended because of differences between it and its employés, and that, by reason thereof, and the ill will against it of the public engendered thereby, its receipts became much less than they would otherwise have been. Again, the traction company and its directors have no legal responsibility for this. That company is not even a railroad corporation. It is a mere stockholder of the Brooklyn Heights Company. It is true that its $30,000,000 of paper shares of stock depended for dividends upon any surplus earnings of the Brooklyn City Company which the Brooklyn Heights Company might be able to make and keep under its lease as above set forth, and declare as dividends on its paper shares, and which would in that way get into the treasury of the traction company, it being the owner of such shares, and in turn be divided as dividends upon the said paper shares of the traction company; and it may be admitted that the eagerness to get dividends on the said $30,000,000 of paper stock shares might lead to the undue cutting down of expenses, and become the just cause of complaint by employés and of a controversy by them about wages. But that does not shift the legal responsibility of the directors of the Brooklyn Heights Company for the conducting of that corporation to the directors of the traction company, even though they may be the same individuals. The law allows the connection which exists between these three corporations, though two of them may be merely feeding on the other and absorbing its earnings; and that has to suffice in a court of law. The evils and wrongs alleged here are inevitable from such a use of public franchises, and it may well be said that it would be better if the Brooklyn City Company was obliged to use and operate its franchises and roads, and be held responsible therefor, and had to keep all of its earnings, and use the same in increasing its service of the public, by furnishing cars enough to give every passenger the seat he is entitled to, by putting its wires under ground, and so on; and that if dividends still grew larger than the public should, in good conscience, and under

wholesome principles of government, be required to pay, that fares should be reduced as a healthy and just remedy. But there is a time and place to consider views like these. They may pass incidentally before a court, but it may not be swerved by them in the interpretation and administration of the law just as it is.

That the will of the directors of the traction company is paramount in the operation, policy, and conduct of the great system of street railroads leased by the Brooklyn City Company to the Brooklyn Heights Company is plain enough; but that arises, not out of any legal power or responsibility vested in or imposed upon them by law, but out of the fact that the traction company owns all of the shares of stock of the Brooklyn Heights Company, and by that means elects the directors of that company. If both sets of directors could be held responsible for mismanagement and waste of the property of the Brooklyn Heights Company, because they joined therein, it could only be in an action brought upon that basis, and to which they were all made parties. It therefore remains only to consider if any waste of the property of the traction company by its directors be made out. In the said lease by the Brooklyn City Company to the Brooklyn Heights Company the latter company was required to deposit $4,000,000 with a trust company as a guaranty fund for performance of the covenants of the lease, including the payment of the rent. It was agreed in the lease that if the lease were broken and forfeited, this fund should become the property of the lessor company as damages for the breach. The traction company, being the owner of the stock of the lessee, put up this fund. All of the property which the traction company owned was its interest in this fund, the paper shares of the stock of the said lessee company, and also of the Brooklyn, Queens County & Suburban Railroad Company. In order to raise money to be used in the change from horses to electricity, above mentioned, the said $6,000,000, received from the Brooklyn City Company for that purpose, being exhausted, the said lessee company and the defendant traction company jointly made certain so-called trust notes for $1,900,000, and the traction company executed an agreement to a trustee, in effect mortgaging all of its said property to secure the payment thereof. Default being made upon the said trust notes, the said trustee began a suit in the United States circuit court for the Eastern district of Virginia to foreclose the said trust mortgage. The defendants (the said two companies) appeared and submitted to a judgment of foreclosure, and a sale under the said judgment of all of the said property for $5,500,000 has been had in the city of New York by that court's officer appointed for the purpose. It appears, before me, that the defendant traction company now owns no property, except the surplus of the said purchase price after paying the said notes, and also that it has no other indebtedness. The allegation of the complaint is that the said suit in the United States circuit court was collusive between the said trustee and the defendant directors, in order to give a preference to creditors; but, inasmuch as the said trustee and the holders of the said trust notes were the only creditors, there is

nothing therein. The mortgage debt was genuine, and was due, and the trustee had the right to foreclose. There could be no collusion in that. The validity of the said sale is questioned, on the ground that the judgment of the said circuit court had no effect over property here, and could not be executed here; and it is urged that this court should appoint a receiver to regain the said property, or take the proceeds of the sale. But, before the said foreclosure suit was commenced, a holder of one of the said defaulting trust notes had begun a creditors' suit against the said traction company in the said United States circuit court, and a receiver of all the property of the said company was appointed. He took actual possession of the said property (except, of course, the said guaranty fund, which he could not remove), and was also the court's officer, who sold under the foreclosure judgment. He has the proceeds of the sale, and, after paying the said trust notes, and receiver's certificates to the amount of $420,000 issued by him to raise money to pay rent and prevent the said lease and guaranty fund from being forfeited, he will hold the surplus for the direction of the said circuit court. The circuit court actually having the fund, I do not see that any question of jurisdiction is available. There being no creditors, the fund will belong to the stockholders if the company be liquidated. The traction company having no property except the money now in the hands of the said receiver, and as no judgment could be made herein extending to any property of the Brooklyn Heights Company, or to the question of its waste or spoliation, the motion for a receiver is denied.

Motion denied.